# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DAMIEN DROSS,

      Plaintiff,

v.                                  Case No: 8:24-cv-946-CEH-SPF

ALVIN NIENHUIS and
DYLAN CASTORIA,

      Defendants.

_____/

## <u>O R D E R</u>

This matter comes before the Court on Defendant Dylan Castoria's Partially Dispositive Motion to Dismiss Second Amended Complaint (Doc. 31)[1] and Defendant Alvin Nienhuis' Dispositive Motion to Dismiss Second Amended Complaint (Doc. 32). Plaintiff responded in opposition. Docs. 37, 38. Castoria filed supplemental authority. Doc. 54. The Court, having considered the motions and being fully advised in the premises, will deny Castoria's motion to dismiss and grant, in part, the Sheriff's motion to dismiss.

## I.    BACKGROUND[2]

---

[1] Castoria does not seek dismissal of Count I.
[2] The following statement of facts is derived from the Second Amended Complaint (Doc. 29), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Plaintiff Damien Dross ("Plaintiff" or "Dross") brings this action under 42 U.S.C. § 1983 for violation of his civil rights under the Fourteenth Amendment. Doc. 29. Dross sues Defendant Alvin Nienhuis ("Sheriff Nienhuis") in his official capacity as the Sheriff of Hernando County, Florida.[3]  *Id.* ¶ 5. Dross sues Defendant Dylan Castoria ("Castoria"), who is a deputy sheriff with the Hernando County Sheriff's Office ("HCSO"), in his individual capacity.  *Id.* ¶ 8.

On December 9, 2022, Dross attended his daughter's high school basketball game. *Id.* ¶ 26. Following the game, he agreed to give one of his daughter's teammates a ride home. *Id.* ¶ 27. The teammate lived in an area of Brooksville referred to as "the Ghetto" by many HCSO officers. *Id.* ¶ 28. Dross was driving a new 2022 black Jeep Gladiator. *Id.* ¶ 29. His minor daughter and wife were also in the vehicle with Dross and the teammate. *Id.* ¶ 33.

---

[3] "Sheriff's departments and police departments are not usually considered legal entities subject to suit, but capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *see also* Fed. R. Civ. P. 17(b). "Under Florida law, sheriff's offices lack the legal capacity to be sued." *Wilk v. St. Lucie Cnty. Fla. Sheriff Off.*, 740 F. App'x 658, 662 (11th Cir. 2018); *accord Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) ("Florida law has not established [s]heriff's offices as separate legal entities with the capacity to be sued."); *see also Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016) ("[T]he Sheriff in his official capacity, and not the county 'Sheriff's Office,' is the proper party to an action against the Sheriff or any employee of the Sheriff's Office."). Accordingly, Plaintiff properly names Sheriff Nienhuis as Defendant, in his official capacity, for the Hernando County Sheriff's Office. *See also Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) ("A lawsuit against a governmental official in his official capacity is deemed a suit against the municipality or entity that employs him.").

When Dross was driving through the teammate's neighborhood, Castoria began to follow the Jeep. *Id.* ¶ 30. After dropping off the teammate at her home, Dross exited the neighborhood and turned left onto Martin Luther King Boulevard in Brooksville. *Id.* ¶¶ 31, 32. Castoria followed Dross the entire time. *Id.* ¶ 32. Dross and his wife realized they were being followed, which agitated Dross as he believed he was being racially profiled because he is a dark-skinned Puerto Rican man driving a new and expensive vehicle. *Id.* ¶¶ 34, 35. Dross became nervous given national events across the country regarding police officers' interactions with minorities. *Id.* ¶ 36.

As Dross approached the intersection of Martin Luther King Boulevard and South Broad, he entered the left-turn lane intending to make a left turn onto South Broad Street. *Id.* ¶ 38. Dross turned left and entered the intersection in the available middle lane; all three southbound lanes on South Broad Street were lawfully available to Dross under Florida Statute § 316.151(b)(1). Doc. 29 ¶ 40. Castoria activated his lights and pulled Dross over. *Id.* ¶ 41.

Castoria parked his vehicle behind Dross' car in such a manner that the MVR could not record the passenger side of Dross' vehicle, where Castoria approached and startled Mrs. Dross who was in the passenger seat. *Id.* ¶¶ 43, 44. She rolled her window down and uttered an expletive explaining that Castoria had scared her. *Id.* Castoria told the Drosses the reason for the stop was that Dross was supposed to be in the left lane closest to the median, not the middle lane. *Id.* ¶ 45. Dross protested that he did nothing wrong. *Id.*

3

Castoria requested Dross' driver's license and informed Dross he was pulling him over. *Id.* ¶¶ 46, 46. Dross requested Castoria to come to the driver's side of the vehicle, but Castoria refused. *Id.* ¶ 49. A verbal exchange ensued between Dross and Castoria in which Castoria accused Dross of giving him attitude and Dross told Castoria to do his job. *Id.* ¶¶ 51–54. Castoria gave Dross a citation. *Id.* ¶ 57.

Dross informed Castoria he knew that Castoria had been following him, which Castoria denied. *Id.* ¶ 60. Dross yelled expletives at Castoria and then drove away. *Id.* ¶ 61. Castoria began following Dross at an accelerated speed. *Id.* ¶ 62. Mrs. Dross called 911 and informed the operator that her husband had been racially profiled, harassed, and followed by Castoria. *Id.* ¶ 64. At the same time, Castoria called his supervisor requesting if he could pull Dross over for threatening him. *Id.* ¶ 65. Castoria falsely stated that Dross had a previous offense for battery on a law enforcement officer to justify a high risk stop in which he could threaten Dross with a weapon. *Id.* ¶ 67. Dross alleges that Castoria had a reputation as a hot head who loved to act in an overly aggressive manner toward the public. *Id.* ¶ 68.

Mrs. Dross was still on the phone with the 911 operator when their vehicle was pulled over again by Castoria. *Id.* ¶ 69. Mrs. Dross requested that the 911 call be recorded and that a sergeant or captain be sent to the scene. *Id.* ¶ 71. HCSO Deputy Mark Kay responded as Castoria's back-up. *Id.* ¶ 72. Dross informed 911 that he did not want to get out of the vehicle because Castoria had a gun, and he was afraid Castoria would shoot him. *Id.* ¶ 73.  The 911 operator told him he needed to listen to

the deputies. *Id.* ¶ 74. Ultimately, Dross exited the vehicle, and Castoria threatened to shoot him with a taser. *Id.* ¶ 78. Mrs. Dross and their daughter exited the vehicle and filmed the interactions. *Id.* ¶ 81. Deputy Kay took Dross into custody, thoroughly searched Dross' body and found no contraband or weapons, and then placed Dross in the back of Castoria's car. *Id.* ¶ 82.

Mrs. Dross explained to the other officers how Castoria had racially profiled the Drosses. *Id.* ¶ 83. Castoria wanted to arrest Dross but because the incident was a misdemeanor, Deputy Kay said he should just write Dross a ticket. *Id.* ¶ 88. Both Deputy Kay and Castoria laughed and agreed that charging Dross with a felony would get thrown out. *Id.* ¶ 89. Castoria at some point shut off his wireless microphone so the rest of his interactions would not be recorded, which is in violation of HCSO policy. *Id.* ¶ 91.

Castoria arrested Dross and took him to HCSO for processing and instructed the staff to strip search Dross, specifically stating "search for drugs." *Id.* ¶ 94. Plaintiff alleges that Castoria had no probable cause or reasonable suspicion that Dross was in possession of illegal substances. *Id.* ¶ 95. Dross was then subjected to a traumatizing and humiliating strip search. *Id.* ¶ 97. The HCSO does not permit a strip search, without probable cause, unless the person cannot be released on their own recognizance or on bond. *Id.* ¶ 99. Mrs. Dross had already begun the process of bailing her husband out and therefore Dross was not going to be placed into the general population of the jail. *Id.* ¶ 100.

The State Attorney's Office did not pursue any charges or civil penalties for traffic violations against Dross. *Id.* ¶ 103. Dross suffered pain, anguish, and humiliation because of this invasion of privacy of being strip searched. *Id.* ¶ 102. Dross' attorney was able to view some of the motor vehicle recordings, but HCSO subsequently destroyed all MVR recordings of what transpired with Dross. *Id.* ¶ 106. A public records request to HCSO reflected that Castoria was responsible for preserving the MVR records from his vehicle and was not supposed to destroy them. *Id.* ¶ 111. Castoria has had other complaints submitted to HCSO about him, including allegations of illegal profiling and unlawful searches without probable cause. *Id.* ¶ 112. A public records request did not show any corrective or disciplinary action taken against Castoria regarding Dross' complaint against him or following any other complaints against Castoria. *Id.* ¶ 113.

In a five-count Second Amended Complaint, Dross sues the Hernando County Sheriff Alvin Nienhuis in his official capacity and sues Castoria individually. Dross sues Castoria under 42 U.S.C. § 1983 for constitutional violations in Count I (illegal seizure) and Count II (unreasonable search) and for negligence *per se* in violation of Florida Statute § 901.211 in Count III. Dross asserts *Monell*[4] liability under § 1983 against Sheriff Nienhuis in Count IV (illegal seizure) and Count V (illegal search).[5]

---

[4] *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658 (1978).
[5] Dross' fifth count, which the Court will refer to as Count V, is mislabeled Count IV.

Castoria moves to dismiss Counts II and III for failure to state a claim. He additionally moves to dismiss Count II based on qualified immunity. Doc. 31. Sheriff Nienhuis moves to dismiss the Second Amended Complaint, arguing Dross fails to plead any facts to support agency liability against the HCSO as Dross does not allege facts showing the existence of a policy, custom, or practice as required by *Monell*. Additionally, Sheriff Nienhuis argues Dross' claim for punitive damages should be stricken as such damages are barred as a matter of law. Doc. 32.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient.  *Id*.  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).   The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.

## III.    DISCUSSION

Dross alleges Castoria conducted a pretextual traffic stop without probable cause after racially profiling him. During the stop, another officer's search of Dross' car and body revealed no contraband or weapons. Notwithstanding the lack of reasonable suspicion that Dross was in possession of illegal substances, Castoria ordered the HCSO during processing to strip search Dross for drugs. Dross was subjected to a humiliating strip search that he describes as a visual body cavity search.

In Count II of the Second Amended Complaint, Dross sues Castoria under 42 U.S.C. § 1983 for Fourth Amendment violations resulting from the alleged unlawful strip search. In Count III, Dross sues Castoria under Florida law for negligence *per se* based on Castoria's alleged violation of Florida's strip search statute § 901.22, which precludes the strip search of a person arrested for a traffic or misdemeanor offense unless there is probable cause to believe the person is concealing a weapon, controlled substance, or stolen property.

### A. Castoria's Motion to Dismiss

Castoria moves to dismiss Counts II and III of the Second Amended Complaint. Doc. 31. Castoria argues that Plaintiff's claims fail to state a cause of action because Dross does not allege that Castoria was the one to perform the strip search of Plaintiff. Additionally, as a separate independent basis to support dismissal of Count II, Castoria argues he is entitled to qualified immunity because his conduct of making a traffic stop, arresting Dross, and booking Dross were within his duties as a deputy

sheriff and Dross cannot show that Castoria's conduct violated a clearly established right. That is, Castoria claims that no established right exists for an arrestee not to be strip searched. Regarding Dross' negligence claim in Count III, Castoria argues there is no private cause of action under Fla. Stat. § 901.211; Dross alleges intentional, not negligent, conduct; and Dross fails to allege recoverable damages.

### 1. Ordered Strip Search

In his motion, Castoria argues he cannot be subject to liability for the claims in Counts II and III because he did not personally conduct the strip search. Dross alleges that Castoria instructed the staff to strip search Dross, specifically stating "search him for drugs," Doc. 29 ¶ 94, and that Castoria ordered the search with the intent to humiliate and degrade Plaintiff, *id.* ¶ 96. In a light favorable to Plaintiff, if Castoria "ordered" the strip search, "this might provide a basis for constitutional liability." *Tarantino v. Citrus Cnty. Gov't*, No. 5:12-CV-434-TJC-PRL, 2014 WL 4385550, at *15 (M.D. Fla. Sept. 4, 2014) (citing *Myers v. Bowman*, 713 F.3d 1319, 1328–29 (11th Cir. 2013) (holding that supervisors can be liable under section 1983 when there is a causal connection between actions of the supervising official and the alleged constitutional violation)). Whether Castoria had the authority to order the strip search is a factual dispute that cannot be resolved on the instant motion.

Castoria also argues that the allegation regarding the search of Plaintiff for drugs is ambiguous, noting that suspects and arrestees are searched for drugs every day, in the field and in correctional institutions. Doc. 31 at 7. Significant here, Dross alleges

that Castoria ordered the investigatory search even though a thorough search of his vehicle and body at the scene revealed no evidence that he was in possession of drugs. Additionally, Dross alleges that HCSO policy precludes a strip search of individuals arrested for traffic or misdemeanor offenses unless the arresting officer has probable cause to believe that the individual is concealing a controlled substance, a weapon, or stolen property and further requires a supervisor be contacted before conducting such search. Doc. 29 ¶¶ 19–22.

For purposes of the motion to dismiss, the Court accepts Plaintiff's allegations that Castoria ordered the strip search be done and that he did so although a search of Dross and his vehicle at the scene revealed no evidence of weapons or contraband. Castoria's urgings to the contrary that he did not personally conduct the search or that he did not have the authority to order such a search do not support dismissal of the claims on these arguments at this juncture.

### 2. Qualified Immunity

Qualified immunity is a defense to federal claims only. *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995). "Qualified immunity protects police officers from suit in their individual capacities for discretionary actions performed in the course of their duties." *Carter v. Butts Cty.*, 821 F.3d 1310, 1318 (11th Cir. 2010). The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

10

Castoria argues he is entitled to qualified immunity as to Dross' claim in Count II of the Second Amended Complaint. To receive qualified immunity, "an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks omitted). "A governmental official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). Here, Castoria was acting within his discretionary authority at the time of the acts in question. Castoria's conduct, as alleged by Plaintiff, of pulling Dross over for a traffic stop, arresting Dross, taking Dross into the HCSO for processing and instructing the staff to strip search Dross, falls within the parameters of Castoria's job-related duties as a sheriff's deputy. Accordingly, the burden shifts to Dross for the second step of the qualified immunity analysis.

If a defendant establishes that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate," *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) (internal quotation marks omitted), which a plaintiff can establish by showing the following: "(1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct," *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). Courts may address these two questions in either order,

11

and qualified immunity will protect a defendant if the answer to either question is "no." *See Pearson*, 555 U.S. at 232, 236 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A plaintiff seeking to meet his burden under the second step of the qualified immunity analysis can demonstrate that a right or law was clearly established in three ways. *See, e.g., Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (citation omitted). First, he may show that a "materially similar case has already been decided," in which the judicial precedent is "tied to particularized facts." *Id.* (quotation omitted). This inquiry considers whether "the factual scenario that the official faced is fairly distinguishable from the circumstances facing a governmental official in a previous case." *Id.* Second, the plaintiff may point to a broader, clearly established principle that should control the novel facts of his situation. *Id.* For this option, the principle must be "established with obvious clarity by the caselaw so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* at 1205 (quotation omitted). Third, the plaintiff may fall within a "narrow" category of situations in which the official's conduct "lies so obviously at the very core of what the relevant constitutional provision prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Id.* (quotations and modifications omitted).

In sum, to determine whether qualified immunity applies, "the salient question . . . is whether the state of the law [at the time] gave [defendant] fair warning that [his] alleged treatment [of plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Moreover, "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (quotation and citations omitted).

Dross argues that the Eleventh Circuit's opinion in *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005), clearly establishes the constitutional right under the Fourth Amendment that a post-arrestee may not be subject to an investigatory strip search that is not being conducted pursuant to routine procedures and is without probable cause. *Evans* concerned an arresting officer's investigatory strip search for the purpose of discovering drugs on individuals lawfully arrested for offenses that were not drug crimes. *Id.* at 1275. The plaintiffs in *Evans* were two black male Georgia Southern University students who became lost when traveling at night from Atlanta to Statesboro, Georgia. *Id.* While trying to find their way back to Interstate 75, the plaintiffs passed through the City of Zebulon, Georgia, and were stopped by Officer Stephens, a white male, for going 75 mph in a 45-mph zone. *Id.* Suspecting that Evans, the driver, may be driving under the influence, Stephens ordered Evans out of the car and searched his pockets and his vehicle. *Id.* at 1275–76. Stephens claimed Evans had a beer bottle top in his pocket and there was an open alcoholic beverage in the car. *Id.* A second search of the vehicle and surrounding area revealed nothing. *Id.* at 1276.

13

Stephens asked Evans to consent to a breathalyzer to which Evans requested to speak with his lawyer. *Id.* Stephens charged Evans with speeding and DUI refusal. *Id.* Co-plaintiff Jordan was arrested because an individual with a similar name and Jordan's date of birth had an outstanding warrant. *Id.* After arresting Jordan, his pockets were searched, and Stephens told him that he would let him go if the warrant was for someone else. *Id.* The plaintiffs were taken to the Pike County jail, and both plaintiffs were patted down before they entered the jail building. *Id.* Another officer encouraged Stephens to release Jordan concluding the arrest warrant was not for Jordan. *Id.* Stephens became angry and proceeded to conduct a strip search of Evans and Jordan which was performed in a forceful, unsanitary, and unreasonable manner. *Id.* at 1282.

Relevant to the instant case, the *Evans* court found a constitutional violation, concluding that the strip search—as a post-arrest criminal investigation—was unreasonable and violated the Fourth Amendment where it was "not supported by a reasonable suspicion of the existence of drug evidence." *Id.* at 1278. Here, Castoria attempts to argue that there is no clearly established constitutional right of an arrestee to be free from strip searches while being booked at the jail prior to posting bond. Doc. 31 at 8. In support, Castoria relies on *Florence v. Board of Chosen Freeholders of the County of Burlington*, 566 U.S. 318, (2012) and *Powell v. Barrett*, 541 F.3d 1298, 1300 (11th Cir. 2008), for the proposition that no individualized suspicion is required to conduct a strip search at the jail as part of the routine booking process. However, in both *Florence* and *Powell*, the correctional facilities at issue had routine strip-search-type procedures

14

for all arrestees "regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history." *Florence*, 566 U.S. at 324; *see also Powell*, 541 F.3d at 1300 (involving arrestees searched pursuant to detention facility's policy of strip searching all arrestees as part of the process of booking them into the general population of the facility, even without reasonable suspicion). The courts upheld that these searches do not violate the Fourth Amendment, after balancing the privacy interests of facility inmates against the facility's important security interests. *Powell*, 541 F.3d at 1302 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

In contrast, *Evans*, like the instant case, does not address a policy of routine strip searches of arrestees for security and safety reasons. *Evans*, 407 F.3d at 1278. Rather, *Evans* and this case involve a post-arrest investigatory search conducted by the police looking for evidence. In *Evans*, Officer Stephens maintained that he conducted a strip search because he believed the plaintiffs were in possession of illegal drugs. *Id.* at 1279. The Eleventh Circuit observed that the plaintiffs were not arrested for drugs; they were arrested for DUI refusal and an outstanding warrant. The officers patted down plaintiffs, searched their vehicle and surrounding area, but they did not find any drugs. *Id.* at 1280. Based on this evidence, the appellate court concluded that "Officer Stephens violated Plaintiffs' right to be free from an unreasonable search when he performed an investigatory strip search for drugs: he was without the necessary reasonable suspicion that Plaintiffs (arrested on other charges) had drugs—the asserted ground for the searches—on their person." *Id.* Although at the time of the *Evans* arrest

15

it was not clearly established that a post-arrest investigatory strip search without a reasonable suspicion to support the search violated the Fourth Amendment, *see id.* at 1282, the *Evans* case has now established that these facts make out a constitutional violation. And given that the *Evans* opinion was rendered in 2005, the constitutional right was clearly established at the time of Castoria's alleged misconduct in December 2022.

As in *Evans*, Dross alleges that his vehicle and person were searched at the time of the stop. No contraband or weapons were found. Doc. 29 ¶ 82. He was again asked at the jail if he had anything in his shoes. *Id.* ¶ 92. Dross alleges that even though Castoria had no arguable probable cause or reasonable suspicion that Dross possessed any illegal substances, Castoria ordered the staff to search Dross for drugs. *Id.* ¶¶ 94, 95. The Eleventh Circuit has explained that reasonable suspicion requires that the officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir.1990) (citation omitted). Accepting Plaintiff's allegations as true, Castoria lacked any reasonable suspicion to warrant an investigatory strip search of Dross. Dross states a cause of action for violation of his Fourth Amendment rights based upon an unlawful search, and qualified immunity does not protect Castoria's conduct. Castoria's motion to dismiss is due to be denied on the issue of qualified immunity because Dross' right to be free from an investigatory

16

strip search given the lack of reasonable suspicion he possessed any drugs was clearly established at the time of Castoria's arrest of Dross.

### 3. Negligence Per Se

Count III of Plaintiff's Second Amended Complaint seeks to hold Castoria liable for negligence *per se* based upon an alleged violation of Florida Statute § 901.211. In relevant part, section 901.211provides that "[n]o person arrested for a traffic, regulatory, or misdemeanor offense, except in a case which is violent in nature, which involves a weapon, or which involves a controlled substance, shall be strip searched unless: (a) There is probable cause to believe that the individual is concealing a weapon, a controlled substance, or stolen property." Fla. Stat. § 901.211(2).

Castoria moves to dismiss Count III, arguing that Section 901.211 does not provide for a private cause of action. Additionally, he argues the statute does not create a duty and Plaintiff cannot state a claim for a negligent intentional tort. Finally, Castoria argues that Plaintiff fails to allege damages recoverable for a negligence claim where Dross only alleges non-economic damages.

The Court agrees that Section 901.211 does not reference the creation of an independent cause of action. Rather, the statute states that "[n]othing in this section shall be construed as limiting any statutory or common-law right of any person for purposes of any civil action or injunctive relief." Fla. Stat. § 901.211(6). While there may not be a civil remedy for a statutory violation, the statute does not preclude a common law cause of action for negligence based on the statute. *See Bartsch v. Costello*,

170 So. 3d 83, 87 (Fla. 4th DCA 2015) (finding that "[t]he fact that [a] statute does not provide for a statutory cause of action for a private person, however, does not foreclose the adoption of a statutory duty of care as the governing standard in a common law negligence claim.").

In Florida, proof that a defendant violated a statute can be categorized in a negligence case in one of three ways, depending on the statute's purpose:

> (1) violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence *per se*; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury, also constituting negligence *per se*; (3) violation of any other kind of statute, constituting mere prima facie evidence of negligence.

*Bartsch*, 170 So. 3d at 86 (quoting *Kohl v. Kohl*, 149 So.3d 127, 132 (Fla. 4th DCA 2014)). Here, Plaintiff relies on the second category, arguing that the statute creates a duty to protect a particular class of people from a particular type of injury. Specifically, Florida statute § 901.211 is designed to implement protective protocols related to strip searches of individuals arrested for minor offenses. Plaintiff alleges that the statute creates a duty and that Castoria breached that duty when he ordered a strip search of Plaintiff without probable cause.

Dross also alleges he has suffered damages as a result of the breach of the duty. Castoria argues that Dross' failure to allege physical damages bars his negligence claim because of the impact rule. Florida's version of the impact rule bars a claim for mental

or emotional damages caused by a defendant's negligence unless: (1) the plaintiff sustained a physical impact from an external source; (2) the claim arises from a situation in which the "impact" requirement is relaxed and the plaintiff manifests a significant discernible physical injury or illness as a result of the emotional trauma; or (3) one of the narrow exceptions to the impact rule applies rendering the rule inapplicable. *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007) (per curiam); *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007) (per curiam); *Gracey v. Eaker*, 837 So. 2d 348, 355 (Fla. 2002).

In *Willis*, the Florida Supreme Court clarified that no physical injury is necessary to overcome the impact rule where the plaintiff sustains "an impact or touching." 967 So. 2d at 850 ("When an impact or touching has occurred the rule has no application."). "The essence of impact . . is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body." *Id.* (quoting *Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517, 527 (Fla. 3d DCA 1985)). Dross alleges he was subjected to a traumatizing and humiliating visual body cavity search that resulted in pain, anguish, and humiliation because of this invasion of his privacy. Castoria argues that his allegations are too conclusory to establish damages. Although these facts present a closer call, in a light favorable to Plaintiff, he has alleged sufficient facts to support a claim for damages to overcome the impact rule. Castoria's motion is denied as to Count III.

19

**B. Sheriff's Motion to Dismiss**

In Count IV, Dross sues the Hernando County Sheriff's Office through Sheriff Nienhuis, alleging the HCSO had an unofficial custom and/or policy of allowing its deputies to conduct pretextual traffic stops without probable cause and that this custom or policy is further evidenced by the lack of training as to what constitutes an improper left-hand turn. In Count V, Dross seeks to hold HCSO liable for a *de facto* policy of allowing strip searches to take place and for its failure to train deputies regarding conducting strip searches and what constitutes probable cause to order a strip search.

As a preliminary matter, Sheriff Nienhuis moves to strike Plaintiff's claim for punitive damages. Sheriff Nienhuis is correct that such damages are not available against the HCSO. *See Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995) (holding that sheriff's offices, like municipalities, are immune from punitive damage claims under § 1983). Plaintiff concedes this argument. Doc. 37 at 12. The claim for punitive damages will be stricken.

Counts IV and V assert claims against Sheriff Nienhuis under Section 1983 for illegal seizure and illegal search in violation of the Fourth Amendment. County sheriffs in Florida are subject to suit under 42 U.S.C. § 1983. *See Ortega v. Schramm*, 922 F.2d 684, 694 (11th Cir. 1991). When a Sheriff is sued under Section 1983 in his official capacity, "the suit is simply another way of pleading an action against an entity

20

of which [the Sheriff] is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

A Sheriff's office does not incur § 1983 liability for injuries caused solely by its employees. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, municipalities and other bodies of local government, which are "persons" within the meaning of § 1983, may be sued directly only if they are "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690). "[Section] 1983 also authorizes suit for constitutional deprivations visited pursuant to a governmental custom even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* (citing *Monell*, 436 U.S. at 690–91) (internal quotation marks omitted).

To state a claim for § 1983 liability against a municipality, a plaintiff must allege: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The requisite "official policy" may be alleged in one of two ways: (1) by identifying an officially promulgated policy, or (2) by identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the municipality. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations

omitted). Dross adequately alleges his constitutional right to be free of unreasonable searches and seizures was violated. Thus, the Court turns to whether Dross sufficiently alleges that HCSO had an unofficial custom or policy that constituted deliberate indifference and whether that policy or custom caused the constitutional violations.

### 1. Unofficial Policy or Custom

Counts IV and V seek to hold Sheriff Nienhuis liable on a *Monell* theory of liability based upon the existence of an unofficial policy and/or custom. When alleging such a claim against a sheriff, "Plaintiff must identify the policy or custom which caused his injury so that liability will not be based on an isolated incident, *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted), and the policy or custom must be the moving force of the constitutional violation." *Crenshaw v. Lister,* 509 F. Supp 2d 1230, 1237 (citing *Grech*, 335 F.3d at 1330).

In Count IV, Dross alleges the HCSO had an unofficial policy or custom of allowing deputies to conduct pretextual traffic stops without probable cause when individuals make proper left turns in Hernando County, as well as when individuals are otherwise obeying traffic laws. Doc. 29 ¶ 138. Castoria has had other complaints submitted to HCSO about him, including allegations of illegal profiling, and public records requests reflect that no corrective or disciplinary action was taken by HCSO against Castoria for this conduct. *Id.* ¶¶ 112, 113. Dross references recent news stories about HCSO detaining individuals for minor traffic infractions without probable cause. *Id.* ¶ 145. Dross alleges that Deputy Kay acknowledged the unofficial policy

and/or custom when he agreed with Castoria as to his authority to conduct the illegal traffic stop. *Id.* ¶ 142. Dross further alleges that the HCSO has wide-spread knowledge of this unofficial policy and/or custom, that the policy/custom is pervasive, and that it has resulted in many illegal seizures of individuals in Hernando County. *Id.* ¶ 146. Sheriff Nienhuis argues that reliance upon two or three incidents many months apart is insufficient to establish a custom. While this may be the case, Dross' allegations go beyond alleging a couple of incidents. Taking his allegations as true, Dross plausibly alleges a pattern of similar conduct that may be explored further during discovery. While additional evidence and a higher degree of similarity between incidents may be required to ultimately prove a custom or unofficial policy of pretextual traffic stops without probable cause, at the motion to dismiss stage, the Court finds that Dross has sufficiently alleged a purported custom or policy to state a claim for *Monell* liability against Sheriff Nienhuis in Count IV.

In Count V, Dross attempts to allege an "unofficial custom and/or policy" of allowing investigatory strip searches without probable cause. In his general allegations, which are incorporated into Count V, Plaintiff alleges that the HCSO had a specific policy requiring that any strip search be justified under existing circumstances, conducted in a reasonable manner, and be in accordance with Florida law. Doc. 29 ¶ 19. Plaintiff also alleges a HCSO policy that requires a strip search be conducted only where the life of officers may be placed at risk or there is probable cause to believe that the individual is concealing a controlled substance, a weapon, or stolen property. *Id.*

¶ 21. Despite HCSO having a requirement that a supervisor be contacted before conducting an investigatory search, Dross alleges Castoria did not obtain a supervisor's approval. *Id.* ¶ 101.

Dross responds that Sheriff Nienhuis has adopted a *de facto* policy of allowing such unlawful strip searches to take place, but such claim is not factually supported by his allegations. Dross fails to allege any ultimate facts to support a longstanding and widespread practice of ordering investigatory strip searches without probable cause. To the contrary, as Plaintiff alleges, the HCSO had a policy that strip searches are to be conducted only when there is probable cause or a risk to an officer's life. Moreover, Dross' allegation that HCSO had "early knowledge" of Castoria's ordering of an illegal strip search does not support the existence of a longstanding practice. *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (to impose Section 1983 liability against a municipality based on an unofficial policy or custom, requires a plaintiff establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law"). Indeed, it is axiomatic that Plaintiff cannot use the occurrence of this incident to support an allegation of HCSO's *prior* knowledge of a widespread practice. Dross argues that the fact the investigatory search was ordered and conducted in contravention to the HCSO strip search policies and without being documented plausibly infers that this is a regular occurrence. Dross contends that Sheriff Nienhuis' failure to correct or address this behavior can lead to the inference of

a custom or practice in place at the HCSO. However, Dross' allegations appear to rely only on the one incident that is the subject of this lawsuit, and he fails to offer any other specific factual allegations to support the existence of an unofficial policy or custom of investigatory strip searches being done without probable cause as a matter of custom or practice. Dross' failure to allege any specific facts showing a persistent and widespread practice undermines his *Monell* claim in Count V. "This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.'" *McDowell*, 392 F.3d at 1290 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)). Relevant here, "[t]his prevents the imposition of liability based upon an isolated incident," *McDowell*, 392 at 1290. Plaintiff's claim against Sheriff Nienhuis in Count V is due to be dismissed as he fails to allege facts showing the existence of a custom or unofficial policy of condoning as a regular occurrence investigatory strip searches without probable cause and in violation of HCSO policy.

### 2.  Inadequate Training

Count IV seeks to impose *Monell* liability on Sheriff Nienhuis for inadequate training related to left-hand turns and unconstitutional stops. "[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for [agency] liability under § 1983." *Canton*, 489 U.S. at 387. Inadequate police training may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact." *Id.* at 388. For liability to attach in this circumstance, the identified deficiency in the training program must be closely related to the ultimate injury. *Id.* at 391. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted)). A plaintiff establishes deliberate indifference by demonstrating that the municipality knew of a need for training or supervision but deliberately decided against taking action. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Review of the Second Amended Complaint reveals that Dross' allegations regarding a failure-to-train fall short. Dross alleges he made a proper left turn, but Castoria pulled him over under the guise of an improper left turn. Doc. 29 ¶¶ 40, 45. The allegations related to an alleged lack of training include that the HCSO was not in possession of records or documents that reflect training regarding improper left turns. *Id.* ¶ 10. Dross alleges that the need for training as to what constitutes an unconstitutional stop is clearly obvious because all officers in their duties will encounter situations where they believe individuals are violating traffic laws. *Id.* ¶ 141. Next Dross alleges HCSO's deliberate indifference is evidenced by early knowledge of Castoria's illegal detention and HCSO's failure to train or take corrective action. *Id.* ¶

144.  He asserts that HCSO was put on notice of the need for additional training by the filing of the instant lawsuit. *Id.* ¶ 145.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). "A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities . . ." *Connick*, 563 U.S. at 62 (quoting *Canton*, 489 U.S. at 392) (internal quotations marks omitted). Claiming that the Sheriff was put on notice after-the-fact by the filing of this lawsuit does not satisfy this stringent standard. Moreover, Dross fails to adequately allege how a failure to train related to left hand turns is the cause of the constitutional violation when he is claiming the stop was pretextual in the first instance. Because Dross fails to plead facts showing the requisite deliberate indifference for purposes of a failure to train claim, Sheriff Nienhuis' motion to dismiss on this basis is due to be granted.

Count V similarly attempts to hold Sheriff Nienhuis liable for a failure to train related to conducting strip searches. Dross alleges a lack of training documentation regarding strip searches (Doc. 29 ¶ 151); the need to conduct training regarding strip searches is of paramount importance because it is likely that officers will encounter situations where they believe individuals may be hiding contraband, weapons, or drugs (*id.* ¶ 152); and the failure to train HCSO deputies as to what constitutes an unconstitutional strip search evidences deliberate indifference (*id.* ¶ 154). The Eleventh

Circuit has explained a "pattern of similar constitutional violations is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Cooper v. Rutherford*, 828 F. App'x 619, 622 (11th Cir. 2020) (citing *Connick*, 563 U.S. at 62). While Dross alleges that Castoria has had other complaints submitted to HCSO about him regarding unlawful searches without probable cause (Doc. 29 ¶ 112), this allegation is too vague for the Court to conclude the searches were related to investigatory strip searches. Because the Second Amended Complaint fails to allege any specific facts as to a pattern of similar constitutional violations, Dross' failure to train claim in Count V is due to be dismissed.

Accordingly, it is

**ORDERED**:

1.    Dylan Castoria's Partially Dispositive Motion to Dismiss Second Amended Complaint (Doc. 31) is **DENIED**.

2.    Defendant Alvin Nienhuis' Dispositive Motion to Dismiss Second Amended Complaint (Doc. 32) is **GRANTED** in part and **DENIED in part**. Sheriff Nienhuis' motion is granted to the extent that Plaintiff's claim for punitive damages against Sheriff Nienhuis is **STRICKEN**; Plaintiff's Count V (mislabeled Count IV) *Monell* claim under 42 U.S.C. § 1983 for illegal search is **DISMISSED**; and Plaintiff's Count IV *Monell* claim under 42 U.S.C. § 1983 for illegal seizure is **DISMISSED, in part,** to the extent that the claim is based upon a failure to train. In all other respects, the motion (Doc. 32) is **DENIED**.

28

3.      Defendant Dylan Castoria shall file an answer to the claims against him (Counts I, II, and III) in Plaintiff's Second Amended Complaint within **FOURTEEN (14) days** of the date of this order.

4.      Defendant Sheriff Nienhuis shall file an answer to the remaining claim against him (Count IV) in Plaintiff's Second Amended Complaint, as set forth herein, within **FOURTEEN (14)** days of the date of this order.

**DONE AND ORDERED** in Tampa, Florida on March 28, 2025.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any