# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DAMIEN DROSS,

      Plaintiff,

v.                                                          Case No: 8:24-cv-946-CEH-SPF

DYLAN CASTORIA,

      Defendant.

_____/

## <u>O R D E R</u>

In this action brought under 42 U.S.C § 1983 and Florida law, Plaintiff Damien Dross sues Hernando County Deputy Dylan Castoria for violation of his civil rights arising out of a traffic stop that ultimately resulted in a second stop, Dross' arrest, and a strip search. Before the Court is Defendant Castoria's Dispositive Motion for Final Summary Judgment (Doc. 67). In the motion, Castoria requests summary judgment in his favor on all claims. Plaintiff Dross filed a response in opposition (Doc. 80), Castoria filed an amended reply (Doc. 91), and the parties submitted a Stipulation of Agreed Material Facts (Doc. 85). The Court, having considered the motion, the parties' filings,[1] and being fully advised in the premises, will grant-in-part and deny-in-part Defendant Castoria's Dispositive Motion for Final Summary Judgment.

---

[1] The Court has not considered the Declaration of Dross (Doc. 78) as it was stricken. *See* Doc. 99 at 5; Doc. 100 at 13.

## I.    BACKGROUND[2]

### A.    Stipulated Facts

Defendant Dylan Castoria ("Castoria") is a Deputy Sheriff with Hernando County Sheriff's Office ("HCSO"). Doc. 85 ¶ 3. Castoria completed the Florida Criminal Justice and Standards and Training approved basic recruit curriculum and completed a four-month field training program at HCSO. *Id.* ¶ 4. Castoria has not received written discipline, as reflected in his HCSO employment file, for any complaint or offense involving bias or the unlawful stop or seizure of a person or vehicle as of July 2023. *Id.* ¶ 5.

On Friday, December 9, 2022, Castoria was in uniform and driving a marked patrol car. *Id.* ¶ 6. While driving on Martin Luther King Jr. Boulevard, Castoria was behind a black Jeep SUV. *Id.* ¶ 7. As the two vehicles approached the intersection of Broad Street, Castoria's patrol vehicle and Dross' Jeep entered the left turn lane. *Id.* ¶ 8.  Dross made a left turn. *Id.* ¶ 9. Castoria turned left and turned on his emergency lights to initiate a traffic stop. *Id.* ¶ 10. The traffic stop, and what followed, was recorded on Castoria's dash camera. *Id.* ¶ 11; *see also* Doc. 61-1 at 22.

Castoria issued Dross a citation for an improper left turn. Doc. 85 ¶ 12. Specifically, Castoria cited Dross for a violation of § 316.151(1)(b), Fla. Stat. *Id.* ¶ 13. It is undisputed that Dross did not violate § 316.151(1)(b), Fla. Stat. *Id.* ¶ 14. After

---

[2] The Court has determined the facts, which are undisputed unless otherwise noted, based upon the parties' submissions, including: the parties' Stipulation of Agreed Material Facts (Doc. 85), and the video of the traffic stop (Doc. 61-1 at 22).

Dross left the scene of the initial traffic stop, Castoria stopped Dross again and arrested him. *Id.* ¶ 15.

### B.    Video of Traffic Stop (Doc. 61-1 at 22)

The Court has reviewed the dash cam video and summarizes below portions of the video. The video starts with a view of the back of Dross' vehicle travelling on M.L. King Jr. Blvd as it is approaching the intersection of Broad Street. The view is from Castoria's front windshield. Dross activates his left turn signal to move into the left turn lane of M.L. King Jr. Blvd. Castoria follows Dross' black Jeep into the left turn lane. One vehicle is in front of Dross' vehicle that is stopped at the light at the intersection with Broad Street. Dross' vehicle slows as it approaches the car in front of it and then the light turns green. The vehicle in front of Dross' vehicle turns left onto Broad Street into the left lane closest to the center median. There are three lanes on Broad Street that are available for traffic. When Dross turns left onto Broad Street, he moves into the far-right lane. He drives a couple car lengths in the far-right lane, accelerating slightly faster than the car in the left lane is travelling. When his vehicle is approximately a car length farther along than the car in the left-most lane, Dross activates his left blinker to move into the center lane.

Dross begins his left turn when the video is at 00:14 seconds. Dross is fully in the right lane of Broad Street when the video is at 00:21 Seconds. He turns on his left turn signal at 00:25 seconds. Dross is fully in the center lane at 00:28 seconds. By 00:31 seconds, the video has volume (according to Castoria, the first 30 seconds is buffering

mode), which would be consistent with when Castoria activated his emergency lights to initiate the traffic stop.

### C.      Dross' Answers to Interrogatories (Doc. 61-3)[3]

Dross is a Hispanic male. Doc. 61-3 at 4. After dropping his 15-year-old daughter's young African American female friend in a predominantly Black neighborhood, Dross was followed by Castoria. *Id.* Castoria conducted a traffic stop of Dross' vehicle claiming that Dross had made an illegal left turn. *Id.* at 3. Following this initial stop, Dross claims that Castoria acted out of vindictiveness and misused his authority to conduct a second stop. *Id.* After being pulled over for a second time, Dross was ordered out of his vehicle with his hands up, while guns were drawn on him. *Id.* Dross was arrested and taken to Hernando County Jail. *Id.* at 3, 10. Before being placed in the police car, Dross was searched by Castoria. *Id.* at 10. When they arrived at Hernando County Jail, Dross was searched again by Castoria. *Id.* At the Jail, employees strip searched Dross, during which he was instructed to remove his clothing, jump, cough, and squat. *Id.*

Although Dross was aware that Castoria had communications with other officers regarding the arrest and search, Dross does not have direct knowledge of specific communications between Castoria and any other person regarding a "request, instruction, or order to strip search" him. *Id.* at 9. Castoria told the jail to search Dross for drugs and then he was strip searched. *Id.*

---

[3] Castoria filed Dross' answers to interrogatories. Doc. 61-3.

**D.    Castoria's Declaration (Doc. 61-1 at 2–6)**

Castoria is a Deputy Sheriff with the HCSO Office assigned to the Patrol Division. Doc. 61-1 at 2. He has been with law enforcement since 2021. *Id.* His responsibilities include, among other things, enforcement of traffic laws. *Id.* On Friday December 9, 2022, at 10:15p.m., Castoria was on-duty, in uniform, driving a marked patrol car and was conducting routine patrol. *Id.* at 3. He turned onto M.L King Jr. Blvd. from Jefferson Street and found his vehicle was behind a black SUV with dark-tinted windows (Dross' vehicle). *Id.* He remained behind Dross' vehicle on M.L. King Jr. Blvd. for approximately one to two miles. *Id.* at 4. He was not following Dross' vehicle due to any suspicion. *Id.*

As Castoria's vehicle and Dross' vehicle approached the intersection of Broad Street, both vehicles entered the left turn lane to turn left onto Broad Street. *Id.* Again, Castoria asserts he was not following Dross' vehicle onto Broad Street due to any suspicion or for any other law enforcement purpose. *Id.*

Dross' vehicle turned left onto Broad Street in a wide, sweeping turn such that Dross crossed the left and center lanes of Broad Street, and entered the right most lane. *Id.* Dross' vehicle was in the right lane for several car lengths before signaling and changing lanes to the middle lane. *Id.* When Dross turned left onto Broad Street, there was no impediment to him entering the middle lane and there was no apparent reason for the lane change from the right to the middle lane. *Id.* Castoria states that Dross' "erratic left turn and lane change attracted" Castoria's attention. *Id.* Castoria pulled

5

his patrol car behind Dross' vehicle and turned on his emergency lights to initiate a traffic stop. *Id.* He had no intention of stopping Dross' vehicle until the left turn and lane change occurred. *Id.* at 5.

Castoria's vehicle is equipped with a mobile video recording unit that is always recording. *Id.* at 4. When Castoria activated his emergency lights, the unit saves 30 seconds of video prior to the lights being activated. *Id.* at 5. Thus, the video that begins prior to the left turn and up until Castoria activated his emergency lights was the recorded buffer. *Id.* Dross pulled over into a parking lot. *Id.* Castoria approached Dross' vehicle on the front passenger side. *Id.* Castoria described Dross as belligerent and argumentative. *Id.* Castoria completed the traffic stop and issued Dross a citation for violation of section 316.151, Fla. Stat., because Dross failed to turn into the left most lane on Broad Street. *Id.* Castoria admits he was mistaken about Dross violating that statute as section 316.151(1)(a) applies to vehicles turning right only. *Id.*

After Dross was issued the traffic citation, Dross yelled explicit words at Castoria, calling him a "pussy," "faggot," and "piece of sh**." *Id.* at 6. According to Castoria, Dross said he hoped Castoria "got hit by a car," and as he drove off, Dross commented "I'll see you without your cop uniform on, I'm not worried about it." *Id.* Castoria followed Dross' vehicle and initiated another traffic stop. *Id.* With the assistance of other deputies, Castoria arrested Dross for threats to a law enforcement officer. *Id.* Dross was taken to Hernando County Jail and turned over to jail personnel for processing. *Id.*

6

Castoria states that at no time did he order, direct, request, suggest or otherwise discuss the strip search of Dross. *Id.* Castoria did not witness Dross being strip searched, nor did he hear jail personnel discussing conducting a strip search of Dross. *Id.*

### E.    Procedural Background

Dross initiated this action in April 2024, by filing a three-count Complaint against the Sheriff of Hernando County ("Sheriff"), and Castoria (collectively "Defendants"). Doc. 1. In an Amended Complaint, filed May 8, 2024, Dross sued Defendants under 42 U.S.C. § 1983 for illegal search and seizure in violation of the Fourth Amendment. Doc. 8. In a Second Amended Complaint filed July 22, 2024, Dross sued Castoria, individually, for illegal seizure (Count I), unreasonable search (Count II), and negligence per se under Fla. Stat. § 901.211 (Count III).[4] Doc. 29. Castoria moved to dismiss the Second Amended Complaint. Doc. 31.

After engaging in initial discovery, Dross thereafter failed to participate in discovery or comply with court orders. The magistrate judge entered orders compelling discovery and ordering the Plaintiff to show cause as to why his claims should not be dismissed for failure to prosecute his case. Ultimately, the magistrate judge issued a report and recommendation recommending sanctions in the form of dismissal of all of Dross' claims for his continued failure to participate in discovery and comply with court orders. Doc. 75.

---

[4] Plaintiff also asserted claims against the Sheriff for illegal seizure (Count IV) and illegal search (Count V) under *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Doc. 29.

On April 24, 2025, Castoria filed a Motion for Summary Judgment (Doc. 67), which is pending before the Court.[5] In opposition to Castoria's motion, Dross filed a response (Doc. 80), his declaration (Doc. 78), and a declaration of his counsel (Doc. 79). Castoria moved to strike the declarations (Doc. 81), which the magistrate judge granted in part (Doc. 99). The magistrate judge granted the motion to strike the declaration of Dross as a sanction for "repeated willful non-compliance with discovery rules and orders of the court" under Rule 37(b) because the declaration contains information that Dross failed to produce during discovery. Doc. 99 at 5.

On November 17, 2025, this Court adopted-in-part and rejected-in-part the magistrate judge's report and recommendation recommending dismissal of Plaintiff's claims. Doc. 100. Although the Court rejected the recommendation of dismissal, the Court found that sanctions against Dross were warranted and struck Plaintiff's Declaration. *Id.*

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and

---

[5] On the same date, the Sheriff filed a motion for summary judgment (Doc. 66), which was denied as moot (Doc. 83) on May 21, 2025, following Plaintiff's dismissal of his claims against the Sheriff (Doc. 71).

identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. But a party cannot defeat summary judgment by relying on conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006). Summary judgment should be granted only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Additionally, the Eleventh Circuit has instructed that:

> When considering qualified immunity on a defendant's motion for summary judgment, we consider the record in the light most favorable to the plaintiff, eliminating all

9

issues of fact. "'By approaching the record in this way, the court has the plaintiff's best case before it.... [M]aterial issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity[.]'" *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005)). "[O]nce we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of the officer's actions is a pure question of law." *Penley*, 605 F.3d at 848–49 (internal quotations and emphasis omitted).

*Wate v. Kubler*, 839 F.3d 1012, 1019 (11th Cir. 2016).

## III. ANALYSIS

### A. Federal Claims

Dross asserts Fourth Amendment unlawful search violations against Castoria arising out of an investigatory traffic stop and a post-arrest strip search. Castoria contends the brief traffic stop was not unlawful because it was supported by reasonable suspicion. Regarding the strip search claim, Castoria argues there is no record evidence to support that he ordered the strip search of Dross. Finally, as to both claims, Castoria argues that he is entitled to qualified immunity.

1. Traffic Stop – No Reasonable Suspicion

In Count I Dross alleges Castoria violated his civil rights when Castoria conducted an unlawful traffic stop. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited

10

purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10 (1996) (citations omitted). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. While an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop of an automobile, the officer may do so only if he "has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (citing *Terry v. Ohio*, 392 U.S. 1, 30, (1968)).

In his motion, Castoria argues there was no Fourth Amendment violation because reasonable suspicion supported the brief 10-minute traffic stop. Alternatively, Castoria argues he is entitled to qualified immunity because Dross fails to point to any legal authority that clearly establishes Dross' right to be free from a brief investigatory traffic stop.

In a light favorable to Dross, the non-moving party, Castoria lacked reasonable suspicion to stop Dross' vehicle. According to Dross, Castoria had been following Dross' Jeep since Dross dropped off his daughter's friend in a predominantly Black neighborhood. Castoria denies following Dross for any suspicious or law enforcement purpose. Castoria states he initiated the traffic stop because Dross failed to turn into the left-most lane when he turned left onto Broad Street. Castoria now acknowledges Dross' left turn was not unlawful (Doc. 85 ¶ 14) and that his stated reason that Dross violated Florida law was incorrect. Doc. 67 at 4.

In relevant part, section 316.151, Fla. Stat., unambiguously provides:

11

(1)(a) Right turn.--The driver of a vehicle intending to turn right at an intersection onto a highway, public or private roadway, or driveway must:

1. Make both the approach for a right turn and a right turn as close as practicable to the right-hand curb or edge of the roadway.

. . .

(b) Left turn.--

1. The driver of a vehicle intending to turn left at an intersection onto a highway, public or private roadway, or driveway must approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle and must make the left turn so as to leave the intersection in a lane lawfully available to traffic moving in such direction upon the roadway being entered.

Fla. Stat. § 316.151. Thus, in Florida, a driver turning right should turn as close as practicable into the right-hand lane of the roadway. However, a driver making a left turn may turn into any lane lawfully available to traffic moving in the direction of the turn. Under Florida law, Dross was permitted to turn left into any one of the three lanes on Broad Street that were available.

The Court and the parties have the benefit of the patrol car dash cam video. As seen in the video, it is undisputed that Dross entered the left turn lane of M.L. King Jr. Blvd. to make his turn. He activated his left turn signal. He turned left into the right most lane of Broad Street. There was no vehicle in that lane and it was available to him. His turn was lawful. And Castoria does not dispute this.

Acknowledging his mistaken belief that Dross had violated Fla. Stat. § 316.151, Castoria now argues on summary judgment that he nevertheless had reasonable suspicion to conduct an investigatory stop because there was an otherwise lawful basis

12

for the stop, namely that Dross was driving erratically. In this regard, Castoria states that Dross made a "wide, sweeping turn" and that Dross "crossed the left and middle lanes and entered the right most lane of the three-lane Broad St." Doc. 61-1 at 4, ¶ 10. Dross' "right side tires nearly touched the rights (sic) side painted line." As justification for the stop, Castoria cites to Florida Statute § 316.1925 that requires a motorist to "drive . . . in a careful and prudent manner . . . so as not to endanger the life, limb, or property of any person." He cites § 316.193, Fla. Stat, which makes it illegal for a driver to operate a vehicle under the influence of alcohol, drugs, or chemical substances while their normal faculties are impaired. He also cites § 316.305, Fla. Stat., which provides civil penalties for operating a wireless communication device while operating a vehicle. Lastly, Castoria cites to the community caretaking doctrine which allows a brief detention of a motorist for purposes of checking on their welfare, for example if the driver is having a suspected seizure.

Dross was not cited for violating any of these statutes, and critically, the dash cam video and Castoria's statements in his Declaration do not corroborate his claims that Dross was driving erratically. Castoria states he was following Dross' vehicle on M.L. King Jr. Blvd. for one to two miles without observing anything suspicious or for any law enforcement purpose. Doc. 61-1 at 4, ¶ 8. As Dross' vehicle approached the intersection of Broad Street, Dross entered the left turn lane in order to make a left turn. *Id.* ¶ 9. Thus, nothing up to this point raised any suspicion with Castoria, caught his attention, or caused concern. Indeed, Castoria states he had no intention of pulling over Dross' vehicle up to this point. From this point forward, the interaction is

13

captured on the dash cam video. It was only when Dross made the left turn and lane change that Castoria decided to pull Dross over.

Review of the video reveals Dross travelling straight on M.L. King Jr. Blvd. toward the intersection of Broad Street and then activating his left turn signal as he entered the left turn lane. When the light at Broad Street turned green, the one vehicle that was in front of Dross in the left turn lane turned left onto Broad Street and into the inside left lane next to the center median. Dross turned left onto Broad Street and into the right most lane, a lane that had no observable vehicles and was available to traffic. He stayed in the right lane for a couple of car lengths and then activated his left turn signal to switch lanes to the center lane.

Castoria argues that, notwithstanding his error related to Fla. Stat. § 316.151, alternative bases exist that would justify the brief detention of Dross. The Court disagrees. The dash cam video wholly contradicts this argument and Castoria's statement that Dross made "an erratic left turn and lane change." Doc. 61-1 at 4, ¶ 10; *see Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372 (2007) and holding that where video of the events obviously contradicts a party's version of the facts, the court accepts the video's depiction instead of the party's account).

Objectively, the video shows no erratic driving. Dross was not speeding, he used his turn signals appropriately when changing lanes, he obeyed all traffic laws, he was not tailgating or driving aggressively, he was not swerving, and he entered Broad Street into an available lane. There is no evidence that Dross was using his cell phone or

14

other electronic device; that Dross was under the influence of alcohol or drugs; that Dross was experiencing a medical event or emergency; that Dross seemed in any way impaired; or that Dross' driving was in any way putting another person or vehicle in danger. In a light favorable to Dross, Castoria lacked reasonable, articulable suspicion to conduct the traffic stop. Thus, Castoria violated Dross' Fourth Amendment right to be free from unreasonable seizures.

2. Traffic Stop – No Qualified Immunity

Castoria argues, alternatively, that he is entitled to qualified immunity because regardless of whether or not reasonable suspicion existed, he contends he had arguable reasonable suspicion, which is enough to support a finding that he is entitled to qualified immunity. Castoria is correct that he needs to have only *arguable* reasonable suspicion for purposes of qualified immunity. *See Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000) ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop.") (citations omitted). However, Castoria did not have arguable reasonable suspicion.

Qualified immunity shields federal and state officials from money damages unless the plaintiff can establish that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When qualified immunity applies, it is 'an immunity from suit rather than a mere defense to liability' [and the] doctrine shields

15

'all but the plainly incompetent or those who knowingly violate the law.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (citations omitted). During a qualified immunity analysis at the summary judgment stage, the Court "must take the facts in the light most favorable to the party asserting the injury." *Robison v. Arugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

To receive qualified immunity, Castoria must "first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks omitted). "A governmental official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). In applying each prong of this test, the Court "look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). In other words, the Court "'must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (original emphasis removed) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Castoria is a Sheriff's Deputy and was conducting a traffic stop. The Court finds he was acting within the scope of his discretionary authority when he stopped Dross' vehicle.

16

Once it is determined that Castoria was acting within his discretionary authority, the burden shifts to Dross to demonstrate that qualified immunity is inappropriate. *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015). In that event, Dross must satisfy this two-pronged inquiry: (1) whether the facts that he has shown "make out a violation of a constitutional right"; and (2) whether the right at issue was "clearly established" at the time of Castoria's alleged misconduct. *Gilmore v. Hodges*, 738 F.3d 266, 267 (11th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Court may address either prong first. *See Pearson*, 555 U.S. at 236.

Regarding the first prong, Dross argues that Castoria violated his constitutional rights under the Fourth Amendment by conducting an unreasonable stop. Castoria argues that Dross cannot carry his burden of establishing a constitutional violation because Castoria had at least arguable reasonable suspicion under Florida law to initiate the traffic stop of Dross. Although he was mistaken about Dross violating § 316.151, Fla. Stat., Castoria contends that Eleventh Circuit precedent recognizes that an officer who "reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity." Doc. 67 at 12 (quoting *Jackson*, 206 F.3d at 1166). Critically, the *Jackson* opinion still requires objectively arguable reasonable suspicion. And in a light favorable to Dross, Castoria lacked an objectively arguable basis for conducting the traffic stop.

In *Llorente v. Demings*, 743 F. App'x 327, 328–29 (11th Cir. 2018),[6] the Eleventh Circuit had the occasion to address an officer's mistaken belief that a driver violates § 316.151, Fla. Stat., by failing to make a left turn into the left-most lane. In reversing the district court's grant of qualified immunity to the officer, the Eleventh Circuit held that Llorente's left turn into the middle lane of Lee Road instead of the extreme left lane was legal under § 316.151. The Eleventh Circuit concluded that the officer did not have arguable reasonable suspicion to detain Llorente or arguable probable cause to arrest Llorente under § 316.151 because the turn was legal. *Id.* at 328–29. Similarly, considering the totality of the circumstances, Castoria did not have arguable reasonable suspicion to conduct a traffic stop of Dross for failing to turn into the left-most lane on Broad Street. Moreover, regarding the lane change from the right lane to the middle lane, there was nothing arguably suspicious about the lane change. As evidenced by the video, Dross used his turn signal before switching lanes which were separated by dashed, not solid, white lines.

According to Castoria, he initiated the stop only after observing Dross' left turn onto Broad Street and his lane change into the middle lane. Based on the video, this took place in the span of 14 seconds from Dross beginning his left turn (at 00:14 seconds on the video) to Dross' vehicle being fully in the center lane (at 00:28 on the video). According to Dross, Castoria had been following him since dropping off his

---

[6] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." *United States v. Rodriguez*, 751 F. 3d 1244, 1251 n.5 (11th Cir. 2014) (quoting 11th Cir. R. 36-2).

daughter's teammate in a predominantly Black neighborhood. Based on the record before it, the Court cannot state that a reasonable officer could have believed that Dross' driving in those 14 seconds warranted the initial stop. Accordingly, Dross satisfies the first prong of the qualified immunity analysis of showing there was a violation of his constitutional rights.

Turning to the second prong, Castoria argues that Dross is unable to point to any legal authority that establishes he violated Dross' clearly established rights. "To be clearly established, a right must be well-established enough 'that every reasonable official would have understood that what he is doing violates that right.'" *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks omitted and alteration adopted)). "The critical inquiry is whether the law provided [the Deputies] with 'fair warning' that [their] conduct violated the Fourth Amendment." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

The Eleventh Circuit has explained that a right may be clearly established for qualified immunity purposes in one of three ways:

> First, the plaintiffs may show that a materially similar case has already been decided. Second, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. Finally, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary.

*Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (citations, quotation marks, and alterations omitted).

As a preliminary mater, when Castoria conducted the stop of Dross, it was clear that a traffic stop is a seizure within the meaning of the Fourth Amendment, and that a traffic stop without arguable reasonable suspicion violates the Constitution. *See Whren v. United States*, 517 U.S. at 809–10 (automobile stop is subject to the constitutional imperative that it not be objectively "unreasonable" under the circumstances); *Baxter v. Roberts*, 54 F.4th 1241, 1256 (11th Cir. 2022) (an officer making a traffic stop must have a "particularized and objective basis for suspecting the person stopped of criminal activity").

More specifically, materially similar case law provides the necessary precedent to clearly establish the right. The Eleventh Circuit has held that an officer's mistake regarding an unambiguous traffic law (as opposed to a mistake in fact) cannot provide reasonable suspicion to justify a traffic stop.[7] *See United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003) (officer lacked reasonable suspicion to stop the van because the lack of an inside rear-view mirror, which was the officer's stated reason for conducting the traffic stop, was not a violation under either municipal or state law).

---

[7] Objectively reasonable mistakes in the law, where the law is ambiguous or unclear, however, may support a finding that a traffic stop was constitutional. *See, e.g., Heien v. North Carolina*, 574 U.S. 54, 68 (2014) (officer had reasonable suspicion to make traffic stop for stopping driver with only one working brake light where the plain language of the statute at issue was unclear); *United States v. McCullough*, 851 F.3d 1194, 1201 (11th Cir. 2017) (officer's traffic stop was valid when he stopped a driver for having a license plate cover that obscured the state name because the language of the statute was unclear and left open the possibility of a different interpretation). In contrast, here, Fla. Stat. § 316.151 is neither unclear nor ambiguous, and Castoria's mistake that the statute required a driver turning left to turn into the left most lane was objectively unreasonable. *See Llorente*, 743 F. App'x at 328 (officer lacked reasonable suspicion to stop Llorente for failing to turn left into the left most lane based on officer's mistake of law that Llorente's left turn violated § 316.151, Fla. Stat).

Here, Castoria's stated reason for conducting the traffic stop was that Fla. Stat. §
316.151 prohibits a driver turning left to turn into any lane except for the left most
lane.[8] That is objectively wrong under a plain reading of the statute. *See Llorente*, 743
F. App'x at 328–29.

Section 316.151, Fla. Stat. is separated into lettered paragraphs. Subsection (a)
pertains to right turns. Subsection (b) pertains to left turns. Paragraph (b)(1)
unambiguously provides that a driver turning left may do so into *any* available lane.
There is no restriction as to which lane—only that it be a "lane lawfully available to
traffic moving in such direction upon the roadway being entered." Fla. Stat. §
316.151(b)(1). Because Castoria had fair warning that conducting a traffic stop based
on a purported violation of a clear and unambiguous traffic law that was objectively
incorrect is unconstitutional, he is not entitled to qualified immunity as to Count I.

3. Unlawful Search Claim

Castoria moves for summary judgment as to Count II's § 1983 claim for
unlawful search based on the strip search. Castoria argues that he is entitled to
judgment in his favor on this claim because the record is devoid of any evidence that
he ordered, directed, requested, suggested, or participated in a strip search of Dross.
Alternatively, Castoria argues he is entitled to qualified immunity. In response, Dross
argues that in Dross' interrogatory response, he states that "Castoria told the jail to

---

[8] To the extent that Castoria seeks to rely upon other factors such as it was 10:30p.m. or it
was a weekend night, mere hunches cannot create reasonable suspicion. *See Terry*, 392 U.S.
1, 27 (1968).

search me for drugs and then they strip searched me." Doc. 80 at 11; *see also* Doc. 61-3 at 9. He goes on to cite to HCSO policy regarding strip searches which provides: "A strip search of general population inmates is not routinely conducted, but shall be performed when there is reasonable belief the inmate may be in possession of an item of contraband. In cases of drug or weapon related charges a strip search is conducted." Doc. 79-8 at 3.

It is undisputed that Castoria did not conduct the strip search of Dross. Further, on the record before the Court, there is no dispute in fact that Castoria did not request, instruct, or order the strip search of Dross. Doc. 61-3 at 9; Doc. 61-1 at 6 ¶ 17. Thus, Dross' claim as to Count II fails because there is no record evidence that Castoria conducted an unlawful search of Dross in violation of the Fourth Amendment. Dross is unable to establish a claim for unlawful search based on the strip search.

In the Court's order on Castoria's motion to dismiss, the Court observed that if Castoria "ordered" the strip search, "this might provide a basis for constitutional liability." Doc. 56 at 9 (quoting *Tarantino v. Citrus Cnty. Gov't*, No. 5:12-CV-434-TJC-PRL, 2014 WL 4385550, at *15 (M.D. Fla. Sept. 4, 2014) (citing *Myers v. Bowman*, 713 F.3d 1319, 1328–29 (11th Cir. 2013) (holding that supervisors can be liable under section 1983 when there is a causal connection between actions of the supervising official and the alleged constitutional violation)). Dross has failed to come forward with any evidence showing that Castoria had the authority to order a strip search or that he did, in fact, order one. Further, Dross does not refer to any affidavits or testimony of the jail personnel who conducted the strip search which may have, at a

22

minimum, raised a question of material fact on this claim. And Dross' interrogatory response that Castoria told the jail to "search him for drugs" does not salvage his claim. First, it is not an order to strip search, and second, there's no evidence of Castoria having supervisory authority to issue such orders.[9] Finally, to the extent that Dross argues there was a violation of the HCSO policy related to strip searches, a departmental policy violation does not establish a constitutional violation. *See, e.g., Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527 (11th Cir. 1987) (even if a state statute has been violated, that does not prove a violation of a federal constitutional right); *Hodge v. Jones*, 31 F.3d 157, 168 (4th Cir. 1994) (showing a State's violation of its own laws or procedural rules does not demonstrate a violation of a federal constitutional right); *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988) (police department guidelines do not create a constitutional right). In the absence of evidence of a constitutional violation by Castoria related to the strip search, Dross' claim in Count II fails and Castoria is entitled to summary judgment.[10]

### B.    State Law Claim - Negligence Per Se

Count III of Plaintiff's Second Amended Complaint seeks to hold Castoria liable for negligence *per se* based upon an alleged violation of Florida Statute § 901.211. In relevant part, § 901.211, Fla. Stat., provides that "[n]o person arrested for a traffic,

---

[9] Defendants' initial disclosures (Doc. 79-7 at 3), a copy of which Plaintiff filed, identified three HCSO deputies with knowledge of Plaintiff's processing at the jail, but Plaintiff did not come forward with any statements or testimony from these witnesses related to the strip search.

[10] As for Castoria's alternative argument, because the Court finds no Constitutional violation, Castoria would be entitled to qualified immunity as to Plaintiff's claim in Count II.

regulatory, or misdemeanor offense, except in a case which is violent in nature, which involves a weapon, or which involves a controlled substance, shall be strip searched unless: (a) There is probable cause to believe that the individual is concealing a weapon, a controlled substance, or stolen property." Fla. Stat. § 901.211(2).

In Florida, proof that a defendant violated a statute can be categorized in a negligence case in one of three ways, depending on the statute's purpose: (1) violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury, also constituting negligence per se; (3) violation of any other kind of statute, constituting mere prima facie evidence of negligence. *Bartsch v. Costello*, 170 So. 3d 83, 86 (quoting *Kohl v. Kohl*, 149 So.3d 127, 132 (Fla. 4th DCA 2014)).

Castoria argues that Dross' claim is premised on intentional, not negligent, conduct and there can be no negligence claim based upon intentional actions. Doc. 67 at 21 (citing *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996) (finding plaintiff cannot assert a claim for "negligent" use of excessive force)). Dross contends that *Sanders* is distinguishable because *Sanders* was an excessive force case and the intentional tort of battery was a necessary element. Instead, Dross argues that Castoria breached a standard duty of care by committing acts that are deemed wanton, willful and reckless, more akin to gross negligence, as opposed to "intentional" conduct.

Considering the evidence in a light favorable to Dross, his claim still fails. Although Dross claims that Castoria told jail personnel to search him for drugs, that

24

comment alone does not create a genuine issue of material fact that Castoria breached the statute where the record evidence shows that Castoria did not request, suggest, instruct, order, or perform the strip search of Dross. There is no record evidence before the Court that Castoria ordered a strip search of Dross at the jail.

As to Dross' claim in Count III, Castoria additionally argues that he would be entitled to statutory immunity under Fla. Stat. § 768.28, which provides, in relevant part:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Castoria argues there is no evidence that Castoria acted outside the scope of his employment or in bad faith in order to hold him personally liable. Given the lack of record evidence that Castoria acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property as it relates to the strip search, the Court agrees Castoria would be entitled to statutory immunity on this claim. Accordingly, it is

**ORDERED**:

1.    Defendant Castoria's Dispositive Motion for Final Summary Judgment (Doc. 67) is **granted-in-part** and **denied-in-part**.

25

2.      The motion (Doc. 67) is **granted** to the extent that Defendant Dylan Castoria is entitled to summary judgment in his favor and against Plaintiff Damien Dross as to Plaintiff's claims in Count II (unreasonable search) and Count III (negligence per se under Fla. Stat. § 901.211) of the Second Amended Complaint.

3.      The motion (Doc. 67) is **denied** as to Plaintiff's claim against Castoria in Count I (illegal seizure) of the Second Amended Complaint.

4.      Castoria's claim of qualified immunity as to Count I is **denied**.

5.      Within fourteen (14) days, the parties shall confer and file with the Court a joint notice of availability for trial, indicating the months between November 2026 and June 2027 that both sides are available for trial and the expected length (number of days) of trial.[11] Upon receipt of the parties' notice, the Court will issue an amended Case Management and Scheduling Order scheduling the pretrial conference and setting the case for jury trial.

**DONE AND ORDERED** in Tampa, Florida on March 30, 2026.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any

---

[11] The Court is aware that the parties previously expected the trial of this case to take 4 days. Doc. 25 at 2. Given that only issues related to Plaintiff's claim against Castoria in Count I remain, the parties shall provide an update as to the anticipated number of days the trial will take.

26